UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DENISE MARK,

    Plaintiff,

v.                                                                                   Civ. No. 15-851 KG/GJF

UNITED STATES OF AMERICA,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

THIS MATTER is before the Court on Defendant's "Motion to Dismiss Plaintiff's Claims Not Raised in her Tort Claims Notice for Lack of Jurisdiction" ("Motion") [ECF No. 20]. Therein, Defendant moves to dismiss all claims in Count 2 of the Complaint pertaining to allegations of "negligent hiring, credentialing, training, supervising and staffing." Def.'s Mot. to Dismiss Pl.'s Claims Not Raised in Her Tort Claims Notice for Lack of Jurisdiction 1, ECF No. 20 (hereinafter "Def.'s Mot. to Dismiss"). Having reviewed the briefs and relevant law, the Court will **GRANT** Defendant's Motion.[1]

**I.    BACKGROUND**

This case concerns the medical treatment that Plaintiff, Ms. Denise Mark, received while she was a patient of First Choice Community Healthcare ("First Choice") in Belen, New Mexico. Pl.'s Compl. 2, ECF No. 1. On July 12, 2013, Plaintiff presented at First Choice with a blister on her foot. *Id.* Over the course of the next six weeks, between July 15, 2013 and August 26, 2013, Plaintiff returned to First Choice for a total of thirteen follow-up appointments. *Id.* On September 3, 2013, Dr. Jeansonne, who was Plaintiff's treating physician, ordered an MRI which showed the infection had spread into her bones. *Id.* Plaintiff then went to the University of New

---

[1] On May 2, 2016, pursuant to 28 U.S.C. § 636(c)(1) and D.N.M.LR-Civ. 73.2(a), the parties consented to have the undersigned decide the merits of this dispositive motion. *See* ECF No. 26.

1

Mexico Hospital and underwent multiple surgeries on her left leg resulting in her leg being amputated up to her knee. *Id.*

## II. PROCEDURAL HISTORY

Plaintiff filed her Tort Claim Notice with the United States Department of Health and Human Services ("DHHS") in August 2014. *Id.* In Section 8 of the notice, Plaintiff wrote:

> Ms. Mark presented to First Choice Community Healthcare in Belen, New Mexico on July 12, 2013. Scott Jeansonne, D.O. prescribed oral antibiotics and scheduled Ms. Mark to follow up with Janice Molina, R.N. Ms. Mark followed up with Nurse Molina 13 times to "repack" her wound. After 13 visits, Dr. Jeansonne was finally consulted again. By that time it was too late, and the infection had spread into Ms. Mark's bones. Ms. Mark was sent to the University of New Mexico Hospital, where she underwent multiple surgeries to amputate her left leg up to her knee.

Def.'s Mot. to Dismiss 2, ECF No. 20. DHHS denied Plaintiff's administrative claim on May 21, 2015, which gave her the right to file a lawsuit against the United States within six months from the date of the denial. Pl.'s Compl. 2, ECF No. 1. Plaintiff filed the instant action on September 24, 2015, in which she seeks relief exclusively under the Federal Tort Claims Act ("FTCA"). *See id.* at 1. Her complaint first alleged a claim for medical negligence arising from the conduct of First Choice staff, including Dr. Jeansonne and Ms. Molina (Count 1). *Id.* at 3. The complaint also alleged an omnibus claim for negligent hiring, credentialing, training, supervising, and staffing (Count 2). *Id.* at 4.

On April 7, 2016, the United States filed the instant Motion. ECF No. 20. Plaintiff filed her response on April 25, 2016, (ECF No. 25), and the United States replied on May 12, 2016. ECF No. 28. At the Court's direction, the parties have since filed supplemental briefs on the applicability of the recently-decided case *Lopez v. United States*, No. 15-1169, 2016 WL 2957156 (10th Cir. 2016). ECF Nos. 35-36.

**III.    SUMMARY OF ARGUMENTS**

In its motion, the United States contends that the administrative notice that Plaintiff sent to DHHS lacked any facts supporting allegations of negligent hiring, credentialing, training, supervising, or staffing.  Def.'s Mot. to Dismiss 2, ECF No. 20.  Therefore, the United States argues, the claims made in Count 2 "are subject to dismissal because Plaintiff failed to exhaust such claims at the administrative level."  *Id.* at 3.  In her response, Plaintiff contends the narrative in her administrative claim "fairly described the foundation of [all of] her claims in this case …"  Pl.'s Resp. to Def.'s Mot. to Dismiss 5, ECF No. 25 (hereinafter "Pl.'s Resp."). "Those acts begin with hiring, credentialing, training, supervising, and staffing and end with medical negligence."  *Id.*  She further asserts that dismissing the claims in Count 2 would be contrary to the congressional intent underlying the notice requirement in the FTCA.  *Id.*

**IV.    ANALYSIS**

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  A claim under the FTCA may be made

> … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  It bears repeating that the FTCA constitutes a limited waiver of the federal government's sovereign immunity from private suit.  *See* 28 U.S.C. § 1346 (b).  As such, "[t]his unequivocal waiver of immunity must be construed narrowly and the 'limitations and conditions upon which the Government consents to be sued must be strictly observed and

exceptions thereto are not to be implied.'" *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006) (quoting *In re Franklin Savings Corp.*, 385 F.3d 1279, 1289-90 (10th Cir. 2004)). While reviewing any claim under the FTCA, courts must keep in mind the underlying purposes of the administrative claim presentation procedures, which are designed to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 271 n.3 (10th Cir. 1991) (internal citation omitted).

Prior to filing suit in federal court, a plaintiff must present the tort claim to the responsible federal agency for settlement consideration. *See* 28 U.S.C. § 2675(a). Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the FTCA. *Estate of Trentadue v. United States*, 397 F.3d 840, 852 (10th Cir. 2005). The FTCA notice requirements are jurisdictional and cannot be waived. *Lopez v. United States*, No. 15-1169, 2016 WL 2957156, at *6 (10th Cir. 2016) (citing *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991)).

Federal jurisdiction over damages suits against the United States is dependent upon a claimant presenting to the appropriate federal agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Staggs v. United States ex rel. Dept. of Health and Human Services*, 425 F.3d 881, 884 (10th Cir. 2005) (citing *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992)). The Tenth Circuit has recently emphasized that a "claim," as used in § 2675, must feature two components: "(1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages." *Lopez v. United States*, No. 15-1169, 2016 WL 2957156, at *6 (10th

Cir. 2016). "Thus, the 'claim' asserted 'encompasses any cause of action fairly implicit in the facts.'" *Id.* (quoting *Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996)).

The Tenth Circuit applies a pragmatic test to determine whether an administrative claim's language provides proper notice under the FTCA. *Staggs*, 425 F.3d at 884. It asks "whether the claim's language serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Id.* (citing *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005)) (internal quotation marks omitted). Additionally, "a claim should give notice of the underlying facts and circumstances rather than the exact grounds upon which [the claimant] seeks to hold the government liable." *Staggs*, 425 F.3d at 884 (citing *Estate of Trentadue,* 397 F.3d at 853) (internal quotation marks omitted). While a claim "need not elaborate all possible causes of action or theories of liability," it must nonetheless alert the agency of the facts that reasonably give rise to them. *Estate of Trentadue,* 397 F.3d at 853.

Applying these principles to this case, the Court concludes that the terse facts alleged in Plaintiff's administrative claim were not sufficient to give the United States notice that her claims went beyond traditional breach-of-standard-of-care medical negligence to also encompass negligent hiring, credentialing, training, supervising, and staffing. Although Plaintiff asserts that these claims could be fairly deduced or inferred from her factual description, *see* Pl.'s Suppl. Br. Regarding Def.'s Mot. to Dismiss for "Claims Not Raised in Her Tort Claim Notice for Lack of Jurisdiction" 4, ECF No. 35, the Court is convinced that Tenth Circuit precedent and other persuasive authority compels a contrary conclusion.

Last month, the Tenth Circuit issued a published opinion that virtually decides the instant motion. *See Lopez v. United States*, No. 15-1169, 2016 WL 2957156 (10th Cir. 2016). In *Lopez*, plaintiff filed suit under the FTCA for injuries stemming from lower back surgery at the

Veterans Administration Medical Center in Denver.  *Id.* at *1.  He alleged in part that (1) the doctor was negligent in performing the surgery, and (2) the hospital was negligent in credentialing and privileging the supervising physician involved in the surgery.  *Id.*  The Tenth Circuit addressed the question of whether plaintiff's narration of facts in his administrative claim was sufficient to put the government on notice of the claim of negligent credentialing and privileging.  *Id.* at *5.

> The administrative claim filed by Lopez stated:
>
> This is a claim for medical malpractice arising from substandard medical care provided to Leonard Lopez during a surgical procedure on March 5, 2010 at the VA Medical Center. During the left L5–S1 decompression/discectomy procedure, Glenn W. Kindt, M.D., and Samuel Waller, M.D., cut and removed part of a nerve. Dr. Kindt's and Dr. Waller's cutting and removal of this nerve was a breach of the standard of care and caused Mr. Lopez injuries, damages and losses.  As a result of Dr. Kindt's and Dr. Waller's cutting and removal of the nerve from Mr. Lopez's body, he developed permanent injuries including CRPS Type II and exacerbation of his post-traumatic stress disorder.

*Lopez* at *5.  Although the district court reached the merits of, and denied, plaintiff's claims for negligent credentialing and privileging, the Tenth Circuit held that the district court lacked subject matter jurisdiction over those claims at all.  *Id.* at *4.  In holding that the plaintiff's administrative claim did not reasonably encompass his negligent credentialing and privileging claim, the Tenth Circuit explained: "Nothing in Lopez's administrative claim provided the government with notice that it needed to investigate whether the VA Hospital was negligent in credentialing and privileging Kindt, and it was in turn deprived of any opportunity to settle this potential claim without litigation."  *Id.* at *6.

Like the plaintiff in *Lopez*, Ms. Mark's "Basis of Claim" lacked facts sufficient to put the government on notice of any claim beyond traditional medical negligence.  Her narration of events did not reasonably alert the government to investigate whether Dr. Jeansonne or Nurse

Molina were negligently hired or improperly credentialed to practice at First Choice.  Given the close similarity between the facts in *Lopez* and in the instant case, this Court concludes that *Lopez* is dispositive on the portions of Count 2 that relate to negligent hiring and negligent credentialing.

This Court further concludes that the rule of law repeated and clarified in *Lopez* compels a similar fate for Plaintiff's claims of negligent training, supervising, and staffing.  When an executive branch agency is presented with an administrative claim that – fairly read – centers entirely around the specific medical care rendered by specific personnel to a specific patient, *Lopez* forecloses the argument that such a claim implicitly encompasses ancillary claims having to do with how and why their employer hired, credentialed, trained, supervised, or staffed its personnel.  Factual narrations like those in *Lopez* and in the instant case reasonably prompt the government to investigate only the precise events that occurred during the claimant's course of care that may have led to the result of which the claimant complains.  *Lopez* makes clear that factual narrations that are limited to a description of the particular course of care rendered to a single claimant do *not* reasonably spur the government to investigate how the agency that employed the health care providers managed itself, supervised its employees, or made hiring, credentialing, or staffing decisions.  To alert the government that it also needs to investigate those ancillary and tangential aspects, more facts are required than those set forth here or in *Lopez*.

Even if *Lopez* did not squarely control the issue, however, there is ample other case law that would have led this Court to the same result. For example, in *Staggs v. United States ex rel. Dept. of Health and Human Services*, the plaintiff filed an administrative claim[2] for medical

---

[2] Plaintiff's administrative claim stated:

malpractice resulting from the delivery of her daughter. *Staggs v. United States ex rel. Dept. of Health and Human Services*, 425 F.3d 881, 883 (10th Cir. 2005). After her claim was denied, Staggs sued the United States under the FTCA for medical negligence and lack of informed consent. *Id.* The district court held it lacked subject matter jurisdiction to address the informed consent claim because it was not raised in the administrative claim. *Id.* at 884. The Tenth Circuit affirmed, holding the facts alleged in the administrative claim were insufficient to raise the possibility of a claim of lack of informed consent. *Id.* at 885. The court reasoned: "[G]iven the length and factual specificity of Staggs' description of her claim without a mention of "consent" or a suitable synonym, DHHS could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." *Id.*

Similarly persuasive is *Kikumura v. Osagie*, in which a federal prisoner sued the United States and certain prison officials under the FTCA, alleging inadequate medical treatment and

---

This is an action for medical malpractice against W.W. Hastings Indian Hospital in Tahlequah, Oklahoma by virtue of the negligent management of Kimberly D. Staggs' pregnancy, labor management and negligent treatment of her infant daughter, Baylee R. Staggs upon delivery on March 20, 1999....Kimberly Staggs was admitted to W.W. Hastings for evaluation of preeclampsia. At this point in time and after the amniocentesis, Ms. Kimberly Staggs should have been slated for a C-section. However[,] the staff violated the standard of care by trying to ripen the cervix and induce labor. Under no circumstances should this have been done given her condition. In any event, the decision to ripen the cervix and induce labor was made. Multiple and obvious warning signs were present which included the late deceleration on the fetal heart monitor tapes, her blood pressure, and Meconium staining. The staff and physicians failed to take any of these warning signs into consideration and order a C-section which would have prevented the brain injury that Baylee Staggs has suffered. All of these warning signs were blatant and obvious and included early warning signs of moderate deceleration with very light contractions. In spite of these multiple warning signs the staff continued to be negligent in their management of Ms. Kimberly Staggs' labor. The management was so grossly deviant that an emergency C-section had to be done; was not even done within the standard of care; and proceeded without general anesthesia or a spinal block.... Subsequently, Baylee Staggs was born in a severely depressed hypoxic state and upon delivery the staff further depressed Baylee Staggs by continuing to do harm to her. As a result, Baylee Staggs is permanently brain damaged which was caused by the negligence of the staff of W.W. Hastings Indian Hospital. There is a substantial departure from the standard of care in the monitoring of Kimberly Staggs['] labor and delivery and a severe violation of the standard of care in the attending of Baylee Staggs upon delivery.

*Staggs v. United States ex rel. Dept. of Health and Human Services*, 425 F.3d 881, 883 (10th Cir. 2005).

other claims. *Kikumura v. Osagie*, 461 F.3d 1269, 1273 (10th Cir. 2006) *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). After his administrative claim[3] was denied by the Federal Bureau of Prisons, Kikumura filed suit in federal court, asserting fourteen claims against eight defendants. *Id.* at 1278. He claimed the prison supervisors "negligently failed to adequately train and discipline the [prison] staff, and are liable under respondeat superior." *Id.* at 1279. The defendants filed a motion to dismiss, which the court granted in part based on the finding that the Plaintiff failed to exhaust his administrative remedies. *Id.* at 1280. In affirming, the Tenth Circuit stated "the administrative tort claims he filed with the BOP fail to mention the possibility that his injuries were caused by the inadequate training and supervision of [prison] staff." *Id.* at 1302.

As still another example, in *Bethel v. United States, ex rel. Veterans Admin. Medical Center of Denver, Colorado*, plaintiffs brought an FTCA suit against the Veterans Administration for injuries arising out of a surgical procedure. *Bethel v. United States, ex rel. Veterans Admin. Medical Center of Denver, Colorado*, 495 F.Supp.2d 1121, 1122 (D. Colo. 2007). The original claim was for medical negligence against one of the treating anesthesiologists, but upon dismissal of that defendant, plaintiffs sought to amend their complaint to add a claim against the government for negligent credentialing and privileging. *Id.* at 1122–23. The court reviewed the plaintiffs' administrative claim[4] submitted to the

---

[3] Plaintiff's administrative claim stated he did not receive treatment from a doctor for approximately eight hours after hitting the panic button in his cell. *Kikumura*, 461 F.3d at 1276. "He said that he believed 'the prison officials' delayed response … violat[ed][his] constitutional rights,' …" *Id.*

[4] Plaintiffs' administrative claim stated:

> This is a claim for medical malpractice arising from substandard medical care provided to David Bethel prior to his undergoing a scheduled surgical procedure on 09/10/03. On 09/10/03, David Bethel was scheduled to undergo a surgical procedure known as a fistulectomy at the V.A. Hospital in Denver, Colorado. Mr. Bethel was taken to the O.R. by Anesthesia with a surgical resident in attendance. Mr. Bethel was administered 2 mg. of Versed at which time he became

Department of Veterans Affairs and found the basis of their claim to center entirely around the negligent treatment of the patient during the surgery. *Id.* at 1124. The court determined that the administrative claim provided insufficient notice to the government with respect to negligent credentialing claim. It held the facts and circumstances as alleged in the administrative claim "are simply not those that would put the government on notice to investigate the VAMC's failures in credentialing [the anesthesiologist] or monitoring her competency." *Id.*

The same principles regarding the factual sufficiency of the administrative notice relied upon in *Lopez*, *Staggs, Kikumura*, and *Bethel* are applicable in this case. As implicitly conceded by the government, Plaintiff's narration of facts was patently sufficient to put the government on notice to investigate potential medical negligence in the care rendered to her. But even under the most expansive reading permitted by Tenth Circuit case law, Plaintiff's factual basis in the administrative claim lacked sufficient detail to trigger the government to investigate any of the claims alleged in Count 2. Just as the plaintiff in *Staggs* failed to articulate facts that would

---

> agitated and was having obvious trouble breathing. A decision was made by Anesthesia to induce Mr. Bethel and intubate him. Mr. Bethel was then given induction I.V. sedatives and paralyzed. The anesthesia resident was unable to visualize Mr. Bethel's vocal cords to place an endotracheal tube. The staff anesthesiologist was likewise unable to visualize the vocal cords and it was discovered that the endotracheal tube had been placed in the esophagus and was removed. A bollard laryngoscope was then placed, again without visualization of the vocal cords. At this point, Mr. Bethel's SAO2 did not measure on the monitor and the nurse holding Mr. Bethel's wrist was unable to get a pulse. External chest compressions were begun and Mr. Bethel was administered epinephrine bicarb. Chest compressions were continued while a staff anesthesiologist again attempted to place an endotracheal tube. Again, the attempted placement of the endotracheal tube was unsuccessful. After approximately ten minutes of chest compressions and two doses of epinephrine and atropine, Mr. Bethel's pulse and blood pressure returned. Anesthesia was still unable to place an endotracheal tube and asked for surgical assistance in establishing an airway. A surgeon then tried to place a guidewire through the trachea and out the mouth for placement of the endotracheal tube. This attempted surgical intervention was also unsuccessful. The senior ENT resident then entered the O.R. and assisted the surgeon in an emergency tracheotomy. During the failed attempts to place an endotracheal tube, Mr. Bethel suffered cardiac arrest and a significant hypoxic event lasting between 10 and 20 minutes.

*Bethel* at 1123-24.

suggest a concept related to consent, Plaintiff similarly fails to connect her brief factual narration to the disparate supervisory negligence claims later alleged in Count 2 of her complaint.

Ms. Mark's administrative notice is silent as to any facts relating to the administrative workings or supervisory processes of First Choice. She made no mention of facts that would have caused the government to investigate the hiring and personnel policies, training and supervising practices, or staffing levels at First Choice. In the absence of such facts, the government failed to receive notice that Ms. Mark might eventually raise the claims she made in Count 2 of the complaint. As a result, the government was not reasonably prompted to investigate such claims and was stripped of the ability to consider settling those particular claims prior to the filing of her lawsuit. In the final analysis, permitting Plaintiff's claims in Count 2 to proceed would violate the principle that the government's waiver of sovereign immunity is to be construed narrowly.[5]

---

[5] The undersigned's decision is also consistent with another recent decision in this district. In *Benally v. United States*, the court addressed whether the tort claim notices submitted to the United States Department of Health and Human Services adequately alerted the government that plaintiff might raise a claim for post-operative negligence. *Benally v. United States*, No. 13-CV-0604-MV-SMV, WL 3200125, at *1 (D.N.M. May 20, 2016). Plaintiff's amended administrative notice stated:

> On November 23, 2008, or thereabout, Helen Benally underwent surgery on her left hip surgery [sic] at the Gallup Indian Medical Center in New Mexico. Ms. Benally's left hip surgery was mishandled causing Ms. Benally severe pain and serious mobility programs [sic]. The surgery at GIMC was performed negligently and below the standard of care, causing permanent damage. Further surgery became necessary.

*Id.* The government sought to dismiss the post-op negligence claims for lack of subject matter jurisdiction, arguing that "because Plaintiff failed to exhaust such claims at the administrative level, [all] allegations of negligence regarding Plaintiff's post-surgical care are subject to dismissal." *Id.* The court agreed, finding that "even a charitable reading of the documents submitted to HHS do not implicate the issue of post-operative care, such that any claims predicated on such a theory of recovery must now be dismissed." *Id.* (internal quotation marks omitted). In so holding, the court reasoned that "[n]owhere in Plaintiff's two submissions to HHS does she mention anything about the quality of the post-operative care that she received, nor does she aver any facts from which the United States could have concluded that Plaintiff believed that the post-operative care provided to her contributed to her injuries." *Id.* at *3.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is hereby **GRANTED** and Count 2 of the complaint is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**.

**IT IS SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE